UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEROY COLLINS,

        Plaintiff,

                                    Civil Action 2:12-cv-1093
     v.                             Judge George C. Smith
                                    Magistrate Judge Elizabeth P. Deavers

WARDEN, LONDON CORRECTIONAL
INSTITUTION, *et al.*,

        Defendants.

## REPORT AND RECOMMENDATION

       Plaintiff, Leroy Collins, an Ohio inmate who proceeds *in forma pauperis* and without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983. This matter is before the Court for consideration of Plaintiff's Motion for Summary Judgment (ECF No. 28), Defendants Motion for Summary Judgment and Memorandum in Opposition (ECF No. 35), Plaintiff's Reply and Memorandum in Opposition (ECF No. 38), and Defendants Reply (ECF No. 42). For the reasons that follow, it is **RECOMMENDED** Defendants' Motion for Summary Judgment be **GRANTED** (ECF No. 35) and that judgment be entered in favor of Defendants. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion be **DENIED**. (ECF No. 28.)

### I. BACKGROUND

       The Court incorporates by reference the factual background set forth in its June 5, 2013 Order. (ECF No. 18.) The Court sets forth the following pertinent facts as they relate to the parties' instant motions.

Plaintiff's action is premised upon his allegations that Defendants, Tina Marie Bottorff and her supervisor, Robin Murphy, violated his Eight Amendment rights as a result of their deliberate indifference to his medical needs. Specifically, Plaintiff alleges that the staff at the London Correctional Facility ("LCI") eliminated the treatment plan that was established at his prior institution to treat his spinal condition. According to Plaintiff, Defendant Bottorff eliminated his lower-bunk restriction and cancelled his prescriptions for Ibuprofen, Tylenol, and Neurontin. (Compl. 2, ECF No. 3.) He further alleges that Defendant Bottorff denied his request for an MRI, discontinued his asthma treatment, and refused to treat him for Hepatitis C. (*Id*.)

Plaintiff also maintains that Defendant Bottorff retaliated against him for filing complaints against her. Specifically, he contends that each time he filed a complaint with her supervisor, Defendant Murphy, Defendant Bottorff discontinued another treatment. (*Id.* at 3.) He also maintains that Defendant Murphy has not taken appropriate steps in response to his complaints about Defendant Bottorff.

Plaintiff sues Defendants in both their personal and official capacities. (*See* Order and Report and Recommendation 5, ECF No. 18.) He seeks injunctive relief against both Defendants, including restoration of his medical treatments and a new medical provider. He also seeks monetary damages from Defendant Bottorff.

Plaintiff filed his Motion on October 3, 2013. (ECF No. 29.) In his Motion, Plaintiff asserts that the Court should grant summary judgment in his favor because he is entitled to judgment as a matter of law. Plaintiff maintains that Defendant Bottorff eliminated his treatment for his spinal condition and refused to treat him for his other conditions. He reiterates that

Defendant Bottorff eliminated treatments as retaliation for his complaints against her and Defendant Murphy failed to prevent such retaliatory action from taking place.

Defendants filed their Memorandum in Opposition and Motion for Summary Judgment on November 12, 2013.  (ECF No. 35.)  In their Motion, Defendants set forth five reasons the Court should grant summary judgment in their favor and deny Plaintiff's Motion.  First, they assert that Plaintiff failed to exhaust his administrative remedies prior to bringing suit.  Second, they contend that Defendant Bottorff was not deliberately indifferent because her decisions were based on sound medical judgment.  Third, Defendants maintain that Defendant Murphy was not involved in Plaintiff's medical treatment and cannot be held liable for responding to grievances.  Fourth, they posit that Plaintiff cannot show Defendant Bottorff's retaliatory motive for adjusting his treatment plan.  Finally, Defendants assert that they are entitled to qualified immunity.

Plaintiff opposes Defendants' Motion.  In his Reply, Plaintiff asserts that he completed the grievance process and exhausted his administrative remedies prior to bringing suit.  Further, he notes that he was transferred to the Franklin Medical Center ("FMC") on October 15, 2013 and "within two weeks of [his] arrival . . . the medical staff reinstated the original treatment plan."  (Pl.'s Mem. in Opp. 3, ECF No. 38.)  He maintains that genuine issues of material fact remain, including the reasons for Defendant Bottorff's decision to eliminate most of his medical prescriptions, whether Defendant Bottorff should have ordered an MRI, and whether Defendant Murphy knew of Defendant Bottorff's allegedly unconstitutional actions.

In Defendants' Reply, they again assert that no genuine issues of material fact exist and summary judgment should be granted in their favor.  They maintain that Plaintiff did not exhaust his administrative remedies as it pertains to his asthma and hepatitis treatment.  They contend that Plaintiff cannot show that Defendant Bottorff was deliberately indifferent to Plaintiff's

medical needs or that Defendant Murphy violated his rights.  Finally, Defendants again contend that they are entitled to qualified immunity.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'"  *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute."  *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case,

summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III.  ANALYSIS

### A.    Mootness

Although the parties do not address the issue, the Court properly raises the jurisdictional issue of mootness *sua sponte*.  *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . . .") (internal quotations marks and citations omitted); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993) ("Questions of jurisdiction are fundamental matters which [a court] may review *sua sponte*.").

Article III of the United States Constitution limits a federal court's exercise of judicial power to actual, ongoing "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Article III's case-or-controversy requirement subsists throughout all stages of the litigation.  *U.S. v. Juvenile Male*, 131 S.Ct. 2860, 2864 (2011) (internal quotation marks and citation omitted) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed.").  The doctrine of mootness is a corollary of Article III's case-or-controversy requirement.  "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction."  15 James Wm. Moore *et al.*, *Moore's Federal Practice* § 101.9, at 101–238 (3d ed. 2011).

When an inmate files suit against prison officials at the institution of his incarceration based upon those officials' wrongful conduct, seeking declaratory and injunctive relief, and that

inmate is subsequently transferred or released, courts routinely dismiss the declaratory and injunctive relief claims as moot.  *See Sossamon v. Texas*, 131 S.Ct. 1651, 1669–70 (2011) (citations omitted) ("A number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits."); *see*, *e.g., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (inmate's request for injunctive relief mooted upon transfer from relevant prison); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same). Indeed, an inmate's transfer or release ends the alleged violations of his or her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger*, 983 F.2d at 724; *Fredette v. Hemingway*, 65 F. App'x 929, 931 (6th Cir. 2003) (concluding that an inmate's request for injunctive relief to prevent his transfer to another prison became moot upon the inmate's subsequent transfer because "the district court was unable to grant the relief requested").

"There is . . . an exception to the mootness doctrine for claims that are capable of repetition, yet evade review." *Fredette*, 65 F. App'x at 931.  This narrow, capable-of-repetition exception is limited to situations in which "'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration'" *and* "'there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id*. (quoting *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1029-30 (6th Cir. 1995)).

Applying the foregoing principles in the instant case, the Undersigned concludes that Plaintiff's claims for injunctive relief are moot.  Plaintiff only sues medical staff at LCI, the

6

institution where he was *formerly* incarcerated.  Thus, the Court's entry of equitable relief in Plaintiff's favor would have no effect on Defendants' behavior toward him because they perform their duties at an institution where Plaintiff is not incarcerated.  Put another way, an entry of equitable relief would accomplish nothing.  This Court does not have jurisdiction to accord Plaintiff with prospective relief that has no effect or impact on Defendants.  In addition, because Plaintiff's claims are LCI-specific, and because there is no reasonable expectation that he will be transferred back to LCI or that he will be subjected to the same action at FMC,[1] the capable-of-repetition exception to the mootness doctrine does not apply.  Accordingly, the Undersigned concludes that Plaintiff's claims for injunctive relief are **MOOT**.  The Undersigned therefore **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims for injunctive relief pursuant to 28 U.S.C. § 1915(e)(2) (obligating the court to dismiss a claim at any time if the court determines that it fails to state a claim upon which relief can be granted).

**B.      Summary Judgment**

Accordingly, Plaintiff's remaining claims are those for monetary damages against Defendant Bottorff.  (*See* Compl. 9, ECF No. 3.)  The Court will consider the parties' arguments as they pertain to Plaintiff's claims against Defendant Bottorff in turn.

**1.      Exhaustion**

In his Complaint, Plaintiff asserts that Defendant Bottorff improperly discontinued his asthma medication and refused to treat him for Hepatitis C.  He indicates that his only medication to deal with his pain is an arthritis medicine called Mobic.  (Compl. 2, ECF No. 3.)

---

[1] In fact, Plaintiff points out that the FMC medical staff has reinstated his former treatment plan, making it even less likely that Plaintiff will be subjected to similar actions at FMC.  (Pl.'s Mem. in Opp. 3, ECF No. 38.)

In his Motion for Summary Judgment, Plaintiff asserts for the first time that Defendant Bottorff improperly cancelled his Mobic prescription.  (Pl.'s Mot. 2, ECF No. 28.)

Defendants argue that Plaintiff failed to follow the "three-step prison grievance procedure" for his allegations that Defendant Bottorrf denied his asthma and Hepatitis C treatment and cancelled his Mobic prescription.   (Blackwell Aff. ¶¶ 9-12, ECF No. 35-10.) Defendants provide an affidavit from DeCarlo Blackwell, the custodian of the grievance records at LCI. (Blackwell Aff. ¶ 2, ECF No. 35-10.)   In his affidavit, Mr. Blackwell attests that Plaintiff has not filed any grievances for his claims related to the denial of his asthma treatment.  (*Id.* at ¶ 10.)  Additionally, Mr. Blackwell attests that Plaintiff has not filed any grievances identifying Defendant Bottorff as the individual responsible for denying his Hepatitis C treatment.  (*Id.* at ¶ 11.)  He further avers that Plaintiff's grievance concerning his Mobic prescription occurred after the date he filed the instant lawsuit.  (*Id.* at ¶ 12.)   Finally, Mr. Blackwell attests that the grievance records submitted by Defendants "are true and accurate copies of grievance documents and appeals" for Plaintiff during his time at LCI.  (*Id.* at ¶ 13.)

In his unsworn Memorandum in Opposition, Plaintiff asserts that he has completed the three-step grievance process.  He does not, however, provide such grievance records or an affidavit attesting to his compliance with the process.  The Undersigned concludes that Plaintiff has not adduced sufficient evidence to create a genuine issue of material fact as to whether he exhausted his administrative remedies with regard to the above mentioned claims.

Under 42 U.S.C. § 1997e(a), as amended by the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007)

("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)).  This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "Exhaustion" under the PLRA means "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance."  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").  Where an inmate "affirmatively endeavors to comply" with the administrative procedures, a court must "analyze[] whether those 'efforts to exhaust were sufficient under the circumstances.'"  *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011)).

Ohio has established a procedure for resolving inmate complaints.  Ohio Admin. Code § 5120–9–31.  To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at an ODRC facility must comply with its three-step grievance system.  *Id*.  For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned.  Ohio Admin. Code § 5120–9–31(K)(1).  If the inmate is not satisfied with the results at the first step, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined.  Ohio Admin. Code § 5120–9–31(K)(2).  That

9

inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt.  *Id.*  If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC.  Ohio Admin. Code § 5120–9–31(K)(3).  An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector.

"Although 'exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances,' . . . a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures."  *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (quoting *Jones*, 549 U.S. at 218).  The United States Court of Appeals for the Sixth Circuit has recognized an exception to the general rule requiring adherence to the applicable grievance procedures when "prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits."  *Reed–Bey*, 603 F.3d at 324.

At the time Plaintiff filed his various grievances, Section 5120–9–31(K) set forth the specificity requirement as follows:

> Informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, *the name or names of personnel involved and the name or names of any witnesses*.  Specificity of the complaint provides institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint.  In the event an inmate does not know the identity of the personnel involved, a "John/Jane Doe" complaint may be filed.  However, the complaint shall be specific as to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint.

Ohio Admin. Code § 5120-9-31 K) (emphasis added).

Applying the foregoing authority, the Undersigned concludes that Plaintiff failed to properly exhaust his administrative remedies with regard to the denial of Hepatitis treatment.[2] Although the relevant policy required Plaintiff to identify the individuals involved, he does not name Defendant Bottorff in his grievances. In his grievance related to Hepatitis C treatment, he attributes the denial of treatment to a "Nurse Wise." (Grievance 28, ECF No. 35-2.)

Assuming the claim is even properly before the Court, the Undersigned further concludes that Plaintiff failed to exhaust his administrative remedies as it pertains to his prescription for Mobic.[3] "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)); *see also Napier v. Laurel Cnty., Ky.*, 636 F.2d 218, 222 (6th Cir. 2011) ("The [PLRA] seeks to alleviate the burden of this litigation by requiring prisoners to exhaust all administrative remedies before they can file suit in federal court."). Plaintiff filed his Complaint in this action on November 28, 2012. In his Complaint, Plaintiff indicates that he was receiving Mobic for his pain. (Compl. 2, ECF No. 3.) He asserts that Defendant Bottorff improperly terminated his prescription for Mobic for the first time in his Motion for Summary Judgment.

---

[2] Similarly, Plaintiff attributes his denial of Ultram to "Dr. Woods" in the relevant grievance and now attempts to attribute this denial to Defendant Bottorff. The Court has already dismissed Plaintiff's claims against Dr. Woods. As explained above, Plaintiff has in all events failed to exhaust his administrative remedies as to Defendant Bottorff as it pertains to such a denial. (Pl.'s Grievance 28, ECF No. 35-2.)

[3] The Court notes that Plaintiff first asserted this claim in his Motion for Summary Judgment. He cannot properly assert a claim in a Motion for Summary Judgment, but instead should have moved to amend his Complaint. Even if had moved to amend his Complaint, it would fail as futile because, as set forth above, he did not properly exhaust his administrative remedies.

Defendants' grievance records indicate that Plaintiff did not file a grievance relating to Mobic until December 27, 2012, nearly a month after he initiated this lawsuit.  (Grievance Rec. 9, ECF No. 35-2.)  Plaintiff does not present competent summary judgment evidence to contradict Defendants' grievance records and Mr. Blackwell's affidavit.  Instead, Plaintiff claims, without support, in his unsworn Memorandum in Opposition that he "fully exhausted all 3-steps of the inmate grievance process regarding all aspects of his claims."  (Pl.'s Mem. in Opp. 5, ECF No. 38.)  Plaintiff also attaches to his Memorandum the December 27, 2012 grievance related to Mobic, which specifically notes that he has a federal lawsuit pending against Defendant Bottorff.  (Dec. 27, 2012 Grievance, ECF No. 38-1.)  Thus, because he did not exhaust his claim regarding denial of Mobic prior to instituting this case, the Undersigned concludes that Plaintiff has not exhausted his administrative remedies as it pertains to this claim.

Plaintiff likewise does not provide competent summary judgment evidence under Rule 56 that he exhausted his administrative remedies with regard to his asthma treatment.  The grievance records show that Plaintiff has not yet filed a grievance related to the denial of his asthma treatment.  (*See* Grievance Rec., ECF No. 35-2.)  In response, Plaintiff asserts, without more, that a genuine dispute of material fact exists as to whether he exhausted his administrative remedies.  He does not set forth an affidavit or any other authenticated documentation attesting that he properly grieved the denial of his asthma treatment.  *See United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (concluding that summary judgment was proper where defendant failed to present evidence by "fil[ing] an affidavit" or "sign[ing] any pleading under the penalty of perjury.").  Nor does he provide any grievance records or dispute the affidavit provided by Defendants.  As such, Defendants have adduced sufficient evidence to demonstrate that Plaintiff

has not exhausted his administrative remedies with regard to his claims that Defendant Bottorff improperly withheld his asthma treatment.

Accordingly, the Undersigned **RECOMMENDS** that summary judgment be entered in favor of Defendants on Plaintiff's claims related to denial of his Hepatitis C treatment, his prescription for Mobic, and his asthma treatment.

### 2.    Deliberate Indifference Claims

In his Complaint, Plaintiff alleges that Defendant Bottorff eliminated all treatment for his spinal condition in violation of his Eighth Amendment rights.  He indicates that the treatment plan for his spinal condition included prescriptions for pain relievers including Neurontin, Tylenol, and Ibuprofen, and a lower-bunk restriction.   Defendants contend that summary judgment is appropriate on Plaintiff's deliberate indifference claims because Defendant Bottorff terminated Plaintiff's various treatments based on sound medical decisions and did not intend to inflict punishment.

"The Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted).  A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).  The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).]   The subjective component regards prison officials' state of mind.  *Id.*  Deliberate indifference "entails something more than negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* at 895-96 (internal quotation marks and citations omitted).  The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

13

must also draw the inference." *Id.* at 896 (internal quotation marks and citations omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011).

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he [or she] has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted for the very purpose of causing harm or with knowledge that harm will result. Instead, deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal citations and quotations omitted). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Again, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs related to his spinal condition because Nurse Bottorff discontinued his prescriptions and eliminated a requirement that he be given a lower-bunk bed. Defendants first address Plaintiff's claim that Defendant Bottorff improperly discontinued his prescription for

14

Neurontin. In an affidavit, Defendant Bottorff attests that she terminated Plaintiff's Neurontin prescription because Plaintiff "complained that Neurontin was ineffective at treating his pain." (Bottorff Aff. ¶ 12, ECF No. 35-1.) She further asserts that, at the time, Plaintiff "was still proscribed Mobic . . . to treat his pain." (*Id.*). In his Memorandum in Opposition, Plaintiff agrees that the Neurontin was ineffective to treat his pain but asserts that he asked Defendant Bottorff to substitute that medication with a different pain reliever. He further posits that Defendant Bottorff "refused to give Plaintiff any substitute pain medication." (Pl.'s Mem. in Opp. 3, ECF No. 38.) He maintains that a genuine issue of material fact exists as to whether Defendant Bottorff prescribed Mobic to treat his arthritis and not his disc disease. Defendants note that at the time of his Complaint, however, Plaintiff indicates that he was receiving Mobic as a pain reliever. (Compl. 6, ECF No. 3.)

Next, Defendants address Plaintiff's assertion that Defendant Bottorff improperly eliminated his lower-bunk restriction. They maintain that Nurse Bottorff used her medical discretion to remove the restriction because Plaintiff "was athletic, moved about well," and did not report increased pain over the year. (Defs.' Mot. 12, ECF No. 35.) Defendants also submit evidence that Defendant Bottorff did renew his "job restriction limiting his standing time while at work." (*Id.* citing Med. Record 26, ECF No. 35-3.) In his Memorandum in Opposition, Plaintiff does not dispute Defendant Bottorff's assertion that she maintained his work restriction.

Defendants have provided competent evidence to indicate that Defendant Bottorff did not completely deny Plaintiff care related to his spinal condition. "In cases 'where a prisoner alleges only that the medical care he received was inadequate federal courts are generally reluctant to second guess medical judgments.'" *Burton v. Kakani*, 514 F. App'x 577, 579 (6th Cir. 2013) (quoting *Alspaugh*, 643 F.3d at 169); *see also Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.

1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Here, Plaintiff acknowledges that he was receiving Mobic as a pain reliever at the time he filed his Complaint. Further, he was able to purchase over-the-counter pain relievers at the prison commissary.  As to his lower-bunk restriction, Plaintiff has not rebutted Defendant Bottorff's sworn assertions that she reviewed his history and determined that he no longer was eligible for a low-bunk restriction. Further, Plaintiff does not dispute that Defendant Bottorff maintained his restriction regarding how much time he was required to stand at work.  These are discretionary decisions made by a medical professional.  The Court will not second guess Defendant Bottorff's decision, based on her sound medical judgment, to discontinue Plaintiff's prescription for Neurontin and cancel his lower-bunk restriction.

For the same reasons, the Undersigned also concludes that Defendants are entitled to summary judgment on Plaintiff's claims relating to Defendant Bottorff's decision to use an X-ray as a diagnostic tool rather than the MRI Plaintiff requested.  "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  *Estelle v. Gamble*, 429 U.S. 97, 107-08 (1976).  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."  *Id.*; *see also Marbry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008) (concluding that plaintiff's assertion that his physician "did not order specific tests . . . [did] not state a constitutional claim of deliberate indifference as to serious medical needs.").  Here, Plaintiff does not dispute Defendant Bottorff's statement that she ordered an X-ray rather than the MRI he requested.  In her affidavit, Defendant Bottorff states that she made the decision to

order an X-ray because "Inmate Collins had not complained of pain relating to his back during the previous year, and using [her] medical training, experience, and knowledge, [she] determined that an MRI was not indicated for Inmate Collins."  (Bottorff Aff. ¶ 15, ECF No. 35-1.)  Based on this irrefuted testimony and the applicable case law, the Undersigned therefore concludes that Defendants are entitled to summary judgment on Plaintiff's claim related to his preference for an MRI over an X-ray.

Defendants are also entitled to summary judgment on Plaintiff's claim concerning his access to Tylenol and other over-the-counter pain medications.  Plaintiff has not alleged that he was denied necessary treatment on the basis that he could not afford to purchase the medication.  Although a prison is required to provide its inmates with adequate medical care, this care does not necessarily have to be free of charge.  *See Reynolds v. Wagner,* 128 F.3d 166, 174 (3rd Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"); *Slattery v. Mohr,* No. 2:11–CV–202, 2012 WL 2931131, at *8 (S.D. Ohio July 17, 2012) (inmate forced to purchase over-the-counter medications from commissary pursuant to ODRC policy did not establish an Eighth Amendment violation where he failed to demonstrate that he was denied medical care due to his inability to afford medication); *Hudgins v. DeBruyn,* 922 F.Supp. 144, 151 (S.D. Ind.1996) (holding that policy requiring purchase of over the counter drugs was not unconstitutional); *cf. White v. Corr. Med. Servs. Inc.,* 94 F. App'x 262, 264 (6th Cir. 2004) (citation omitted) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay.").  Plaintiff does not dispute his ability to pay for his over-the-counter medications.  Nor does he challenge Defendant Bottorff's attestation that she terminated his access to free over-the-counter pain medications after a review of his indigency status, in

which she determined that Plaintiff's "financial records no longer categorized him as indigent."
(Bottorff Aff. ¶ 14, ECF No. 35-1.) Plaintiff has not adduced competent sufficient evidence to
create a genuine issue of material fact that Defendant Bottorff violated his Eighth Amendment
rights by requiring him to pay for over-the-counter pain relievers.

The Undersigned therefore **RECOMMENDS** that the Court grant Defendants' Motion
for Summary Judgment and enter judgment in favor of Defendants on Plaintiff's Eighth
Amendment claims.

### 3. Retaliation Claim

Defendants assert that they are entitled to summary judgment on Plaintiff's retaliation
claim against Defendant Bottorff. They contend that Plaintiff has not established a causal
connection between his protected conduct and Defendant Bottorff's allegedly retaliatory actions.
Further, they assert that his claims for retaliation consist of only unsupported, conclusory
allegations. Plaintiff does not address Defendants' arguments in his Memorandum in
Opposition.

The Court of Appeals for the Sixth Circuit has set out the elements of a First Amendment
Retaliation claim as follows:

> To establish a First Amendment retaliation claim, a plaintiff must prove that: 1)
> the plaintiff engaged in activities protected by the Constitution or statute; 2) the
> defendant took an adverse action that would deter a person of ordinary firmness
> from continuing to engage in that conduct; and 3) that this adverse action was
> taken at least in part because of the exercise of the protected conduct.

*Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Thaddeus-X v. Blatter*, 175 F.3d
378, 394 (6th Cir. 1999)). Here, the parties do not dispute that Plaintiff engaged in protected
conduct by filing grievances against Defendant Bottorff. *See Herron v. Harrison*, 203 F.3d 410,
415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances

against prison officials on his own behalf."); *see also Clark v. Johnston*, 413 F. App'x 804, 814 (6th Cir. 2011) (recognizing that inmates enjoy a First Amendment right to file grievances against prison staff).  Further, construing the materials in the light most favorable to Plaintiff, he has arguably met his burden under the second element. The deprivation of a prescribed pain medication constitutes an adverse action.  *Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003); *see also Tate v. Williams*, No. 2:06-cv-47, 2007 WL 2302613, *4 (S.D. Ohio Aug. 8, 2007) ("In the prison context, 'adverse action' includes . . . deprivation of pain medication.").

The Undersigned concludes, however, that Plaintiff has failed to meet his burden on the third element.  To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith,* 250 F.3d at 1037 (citing *Mount Health City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

In support of his retaliation claim, Plaintiff indicates that "[e]very time [he would] file an informal complaint against Nurse Bottorff to [her supervisor], Nurse Bottorff would retaliate against [him] and discontinue a medical treatment for the numerous health problems [he has]." (Compl. 3, ECF No. 3.)  Plaintiff's argument is unavailing.  Temporal proximity between the filing of grievances and an adverse action provide "some circumstantial support for a causal connection."  *Smith*, 250 F.3d at 1038.  That evidence is "easily overcome," however, if Defendants can show that they would have taken the same action in the absence of protected activity.  *Id.*; *see also Thaddeus-X,* 175 F.3d at 399 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.").

Here, Defendants have submitted affidavits and medical records to demonstrate that Defendant Bottorff had neutral, non-retaliatory reasons for adjusting Plaintiff's course of treatment.   First, they provided records to demonstrate the decision to discontinue his asthma treatment occurred on June 5, 2012.  Plaintiff, however, did not file a grievance against Defendant Bottorff alleging retaliation until September 24, 2012.  (Med. Rec. 25, ECF No. 35-3, Grievance Rec. 18, ECF No. 35-2.)  Similarly, Defendant Bottorff eliminated Plaintiff's lower-bunk restriction before he filed any grievances against her, making it impossible for her to have done so in retaliation for his grievances.  Next, they provide records to show that the decision to terminate his treatment for Hepatitis C was made by individuals other than Defendant Bottorff. (Grievance Rec. 36, ECF No. 35-2.)   Further, Defendant Bottorff indicates that she cancelled Plaintiff's Neurontin prescription because he complained about the side effects, which Plaintiff does not dispute.  (Bottorff Aff. ¶ 12, ECF No. 35-1.)  She also provides sworn evidence that she ordered an X-ray for Plaintiff rather than an MRI based on her medical judgment after evaluating Plaintiff's condition.  (*Id.* at ¶ 15.)

Defendants have provided sufficient evidence to show that Defendant Bottorff would have taken the same actions in the absence of Plaintiff's grievances against her.  Therefore, the Undersigned **RECOMMENDS** that the Court grant Defendants' Motion for Summary Judgment and enter judgment in favor of Defendants on Plaintiff's claim for retaliation.

## IV.

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims for injunctive relief be **DENIED AS MOOT**.  It is further **RECOMMENDED** that Defendants' Motion for

Summary Judgment be **GRANTED**.[4]  (ECF No. 35.)  Accordingly, it is **RECOMMENDED**

that Plaintiff's Motion for Summary Judgment be **DENIED**.  (ECF No. 28.)

### V.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).

---

[4] The Court dispenses with an analysis of qualified immunity given this recommendation to grant
summary judgment to Defendants on the merits.

Date: April 23, 2014

        /s/ *Elizabeth A. Preston Deavers*
        Elizabeth A. Preston Deavers
        United States Magistrate Judge